## A. B. James & Co. *v.* J. C. Brooke.

Where a defendant is sued as partner of a commercial firm, on an obligation not signed by him or with his name, the members of the firm are competent witnesses for him, to prove that he was not a partner.

APPEAL from the District Court of the Parish of Natchitoches, *Chaplin*, J. *A. H. Pierson* and *H. M. Spofford*, for plaintiffs and appellants. *Chaplin & Lemée*, for defendant.

BUCHANAN, J. This is a suit instituted against the defendant, as partner in the commercial firm of *Wilson & Co.*, upon a note dated 29th April, 1857, signed *Wilson & Co.*, and payable to plaintiffs.

The answer is a general denial.

The signature to this note was not written by defendant, but by one *Francis Wilson*.

The only question in the case is, whether defendant was a partner in the firm, or not, when this note was given.

On the part of the defendants, *Francis Wilson* and *William Wilson*, two of the partners in the firm of *Wilson & Co.*, were examined under commission, and their depositions offered in evidence, to prove that defendant was not a partner in said firm. Their admissibility was objected to by plaintiff's counsel in crossing the

interrogatories; and the objection being repeated when the depositions were offered, and being overruled by the District Court, the plaintiffs excepted to said ruling.

We do not find that the court erred. The cases of *McIlvain* v. *Franklin*, 2 An., and *Ellis* v. *Lauve*, 4 An., cited by counsel of plaintiffs in argument, are not in point. In both those cases, a partner was offered *by plaintiff* to charge the defendant, as partner, with an obligation contracted by the witness. The court held that the witness was interested to charge the defendant, and thus divide his own responsibility.

But in the present case, the witness is offered *by defendant* to relieve himself from solidarity in the witness's obligation. It is not perceived what interest the witness can have in proving this fact. His interest would rather appear to be opposed to the evidence which he gives.

Considering the case upon the evidence, *pro* and *contra*, we are not satisfied that justice has been done.

On the part of the plaintiffs, it is proved that the house of *Wilson & Co.* had dealings with the plaintiffs, and incurred an indebtedness to them, about a year previous to the date of the sale of goods which was the consideration of the note now sued on; in settlement of which indebtedness the defendant gave a draft upon *Henderson, Terry & Co.*, signed by himself with the social name of *Wilson & Co.*" It is also proved, by a comparison of handwritings, that the defendant, about two years previous to the date of the note sued upon, wrote a letter upon the business of the said firm, and signed it with the social name, which letter contains internal evidence that the writer was a partner in the firm, at its date. In view of this evidence, we consider it established that defendant, if not actually a partner of *Wilson & Co.*, held himself out to the plaintiffs and others as such. But the plaintiffs' book-keeper, examined by them, proves that defendant stated to plaintiffs, in April, 1857, in a letter, that he was not a partner of *Wilson & Co.* This, says the witness, was after the date when the debt sued on in this case was contracted. The date of the note sued on is, as we have seen, the day preceding the last day of April, 1857. The evidence does not explain what was the date of the sale of goods which was the consideration of this note. We view this letter of defendant, spoken of by this witness, as a notification to plaintiffs of the dissolution of the partnership of which defendant was a member; and deem it important, to a satisfactory decision of this issue, that the precise dates of the sale of goods which constituted the consideration of the note sued on, and of the reception of the letter of defendant to plaintiffs, containing the notice of dissolution of partnership should be proved, if possible. In order to give the parties an opportunity of making this proof, we will remand the cause.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, and that this cause be remanded to the court below for a new trial; the costs of appeal to be paid by defendant and appellee, and those of the District Court to await the final decision of the cause.